[Crim. No. 8713. Second Dist., Div. One. Nov. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES LEE KING, Defendant and Appellant.

Irving S. Feffer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk,, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In a nonjury trial defendant was convicted of robbery of the first degree, and it was also found that allegations of two prior felony convictions were true (burglary, and driving an automobile without consent of owner). He appeals from the judgment and the order denying his motion for a new trial.

The People have made a motion to dismiss the appeal on the ground that the appeal is frivolous and lacking in appel-

late objective; or, in the alternative, that the judgment be affirmed.

On June 6, 1962, about 4 a.m., a man drove a 1951 Chevrolet automobile into a Standard gasoline station at 200 West Washington Boulevard in Los Angeles and ordered 50 cents worth of gasoline. While the employee of the station was at the cash box getting change for the man's one-dollar bill, another man, who had a scarf over his head and face, was wearing a long overcoat, and was carrying a sawed-off shotgun, came from behind the station building, went to the employee, and said, "Okay, give me everything." In compliance therewith the employee handed approximately $48 and a packet of Blue Chip Stamps to that man. The money consisted of a 20-dollar bill, several one-dollar bills, and some coins. The packet of stamps had printing thereon as follows: "Standard Stations ... 200 West Washington Boulevard, Los Angeles ...." When the man with the gun reached to get the money and stamps, the employee saw a burn scar on his left hand. The man with the gun then said to the man in the automobile, "Okay, give me your money, too." Thereupon the gunman entered the automobile and it was driven away. The employee reported the robbery to the police and gave them the license number of the automobile (KHS 385).

About 4:45 a.m. of said day, Officer Serenbetz, who had received a radio report of the robbery, observed defendant King sitting on the rear bumper of a parked automobile which was in an alley at the rear of 5016 South Compton Avenue. After the officer had stopped his police car in the alley, the defendant Lacy (codefendant who drove the Chevrolet into the station) walked into the alley. The officer, in making a cursory search or "pat down" of King for weapons, found two shotgun shells in his pocket. King had a paper cup in which there was a large amount of change, and he also had 15 one-dollar bills and 1 five-dollar bill. Lacy had 13 one-dollar bills. On the ground near Lacy there was a large packet of Blue Chip Stamps which had the same printing thereon as that hereinabove stated with reference to the stamps taken in the robbery. The two defendants were arrested.

At the police station, Lacy told Officer Serenbetz and other officers that he had borrowed a 1951 Chevrolet from a fellow by the name of "Willie" and had gone into a doughnut place at Washington Boulevard and Figueroa Street where he saw King, who asked him to wait there 15 minutes and then drive the car to the Standard Station and keep the

employee's attention while he (King) took care of some business there—that he was going to get some tires. Lacy stated further that after he waited that period of time he drove into the station and asked for 50 cents worth of gasoline; then he saw King come around the corner of the station wearing an overcoat and carrying a shotgun; after King got the money, he entered the car, and they went to 49th and Compton Streets where King got out; Lacy took the car to the place where he had gotten it, and then he returned to the place in the alley where the police were. Lacy directed the officers to the garage at the rear of 5016 South Compton Avenue where the officers found two shotguns which were wrapped in an overcoat. The officers found another shotgun shell in the Chevrolet, which car had the license number KHS 385. They found two additional shells under the mattress of Lacy's bed in the garage. Lacy told the officers that King also slept there.

At the police station, Officer Wasson had a conversation with Lacy while King was present. He asked Lacy to tell the same story he had told the officer a short time previously. In response thereto Lacy related in substance the statement hereinabove set forth as his conversation with Officer Serenbetz. In that conversation Lacy stated, in addition to the Serenbetz conversation, that King was the man who was at the station carrying the shotgun and wearing the overcoat and scarf, and that King did not give him any money, but did give him the package of Blue Chip Stamps. He also said that the shotgun (exhibit 2) was the one King used in the robbery. Thereupon, the officer asked King what he had to say. He made no reply.

The service station employee testified that the scar on King's left hand is the same scar that he saw on the hand of the man who had the shotgun at the time of the robbery. He also testified that at the police "lineup" he identified the voice of King as the voice of the man who had the shotgun.

Codefendant Lacy, who was represented by counsel, testified in substance as follows: He and King met; pursuant to an agreement, at a doughnut shop at Washington Boulevard and Figueroa Street after 2 a.m. on said June 6th, and that King had come there in a 1951 Chevrolet automobile. After meeting there, King said that he was going to get some tires at a service station which was about a block from the doughnut shop, and he asked Lacy to help him get them. King told Lacy to wait at the doughnut shop about 15 minutes and then drive the Chevrolet to the service station and get the

employee's attention while King stole the tires and rolled them away from the rear of the station. After waiting as directed, Lacy drove into the station and ordered 50 cents worth of gasoline. While the employee was giving Lacy the change due from the gasoline sale, a masked man, who was wearing an overcoat and carrying a shotgun, walked into the station. At first, Lacy did not recognize the man, but finally recognized him, by his sweater and voice, to be the defendant King. At that time, King was taking the money and Blue Chip Stamps from the employee. Thereafter King snatched Lacy's wallet and entered the car, and then Lacy drove to 49th and Compton Streets where King got out of the car. Then Lacy drove to a place several blocks away where King had borrowed the car from a person by the name of "Willie." After leaving the car there, Lacy walked to his home which was at the address where the officers were talking to King. King had been living there with Lacy about six weeks. The officers found two shotguns behind the garage and found gun shells in King's bed.

Defendant King testified: That in the early morning of said June 6th until approximately 3 a.m. he was at a gambling den near 28th and Cimarron Streets. When he left there he had about $26 which he was carrying in a paper cup. He went by bus to 51st and Compton Streets, and after walking into the alley near there, the police came. He did not have any shotgun shells in his pocket. He did have a scarf, which he used to keep the wind from blowing his processed hair. He did not wear the scarf or an overcoat that night. He did not have a shotgun that night and was not at the service station.

The evidence established that an armed robbery was committed, wherein the service station employee was robbed of approximately $48 (which included several one-dollar bills) and a packet of Blue Chip Stamps. The employee identified defendant as the robber, and said that the barrels of the shotgun (which gun was received in evidence) were similar to those of the gun used in the robbery. About 15 one-dollar bills and a cup of coins were found in the possession of King. A packet of Blue Chip Stamps, on which there was printing indicating that the packet belonged to the Standard service station, was found on the ground near the defendants. King did not say anything when Lacy, in making statements to the police in King's presence, implicated King in the robbery. At the trial, Lacy identified King as the robber who was armed

with a sawed-off shotgun. The evidence of guilt was overwhelming.

The evidence also established that King had been convicted previously of two felonies.

The motion to dismiss the appeal from the judgment is denied. The appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.